WRIGHTSVILLE HARDWARE CO. v. ASSETS REALIZATION CO. et al.

(Supreme Court, Appellate Division, First Department.    December 31, 1913.)

1. SPECIFIC PERFORMANCE (§ 106*)—NECESSARY PARTIES.

In an action for specific performance against a corporation and the two officers in whose name the title to the real property was held, the corporation, while a proper party, is not a necessary one, for all the relief which plaintiff claims might be given by a decree against the individual defendants; it not appearing that the corporation had any equitable title to the property.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 342–351; Dec. Dig. § 106.*]

2. COURTS (§ 14*)—FOREIGN CORPORATIONS—JURISDICTION—"CAUSE OF ACTION ARISING WITHIN THE STATE."

Where a contract for the conveyance of real property, which was made in the state of the forum, specified neither place nor time for performance, and the demand of plaintiff, a foreign corporation, for a conveyance was arbitrarily refused by defendant, also a foreign corporation, plaintiff's cause of action then accrued; and, the demand and refusal having occurred at defendant's local office, the cause of action was one arising within the state, within Code Civ. Proc. § 1780, authorizing an action against a foreign corporation by another foreign corporation upon a cause of action arising within the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 39; Dec. Dig. § 14.*]

3. COURTS (§ 14*)—JURSDICTION—FOREIGN CORPORATIONS—AFFECTING TITLE TO REAL PROPERTY WITHOUT THE STATE—NATURE OF ACTION.

A suit for specific performance is not one involving the title to real property within the exception in Code Civ. Proc. § 1780, authorizing an action against a foreign corporation by another foreign corporation on causes of action arising within the state, except where the object is to affect the title to real property without the state; the courts of equity proceeding in personam, and compelling conveyances by their control over the person of the defendant.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 39; Dec. Dig. § 14.*]

Appeal from Trial Term, New York County.

Action by the Wrightsville Hardware Company against the Assets Realization Company and others. From a judgment dismissing the complaint, plaintiff appeals. Reversed and remanded.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Elbridge L. Adams, of New York City, for appellant.
Taylor More, of New York City, for respondents.

DOWLING, J. Appeal from judgment dismissing the complaint in an action for specific performance of a contract for the purchase of real estate and the personal property pertaining thereto, formerly

of the Grey Iron Casting Company, of Mount Joy, in the state of Pennsylvania.

The Hardware & Woodenware Manufacturing Company, a domestic corporation, was the owner of the property in question, with other factories and plants, when by an order of the United States Circuit Court for the Southern District of New York, in an action brought by Orville R. Noble and another, against it, receivers of its property were appointed who duly qualified, and who were authorized and directed by an order of the court to offer for sale at public auction, to the highest bidder, the property of the corporation, both real and personal; such sale being advertised to be held in the city of Worcester, Mass., on April 13, 1912. Prior thereto, A. A. Tisdale and H. T. Kingsbury, as agents or representatives of a syndicate who wished to purchase the property of the corporation, represented to plaintiff that they intended to bid for the property at said sale, or any adjournments thereof, and requested plaintiff to make an offer of $35,000 for a part of the property to be sold, known as the Grey Iron Casting Company, and to pay 10 per cent. thereof, or $3,500, in case the property should be struck off to them at the sale. Thereupon a formal letter was written by the plaintiff to said Kingsbury, confirming a verbal understanding had some days previously, and making an offer of $35,000 for the property in question, to take effect when the receivers of the Hardware & Woodenware Company had completed the settlement of two lawsuits against them, the terms of which had already been agreed upon. Various other clauses were inserted in this proposition, which are not, however, relevant to this controversy. The offer was accepted by Kingsbury in a letter dated from Keene, N. H., directed to the Wrightsville Hardware Company at 299 Broadway, New York City, and in the course of it he said:

"In accordance with our understanding you will be expected to make a deposit of $3,500 or $4,000 on the 13th of April in event we are the successful bidder, and in consideration of which deposit you will receive proper assurance that you will receive title to the property of the Grey Iron Casting Co. when balance of the purchase price of $35,000 is paid under the terms of the receivers' sales."

The sale of the property occurred at an adjourned sale on April 20, 1912, when it was struck down to Tisdale, representing himself, Kingsbury and others, for the sum of $440,000 for all the property of the Hardware & Woodenware Manufacturing Company, including the property in question. On April 22d plaintiff duly paid Tisdale the sum of $3,500, being the 10 per cent. agreed to be paid by them upon the purchase price of the Grey Iron Casting Company plant. Thereafter it was orally agreed between plaintiff and Tisdale and Kingsbury that the condition as to the settlement of the suits was to be waived and withdrawn. Tisdale and Kingsbury thereafter assigned their bid to various parties, subdividing the same so that some nine plants, including the Grey Iron Casting Company plant in question, were transferred to the Assets Realization Company for $173,000, and Tisdale as agent advised the receivers of such transfer, and requested them to convey or cause to be conveyed to the Assets Realization Com-

pany the property in question. This assignment was made August 8, 1912, and pursuant to the same the receivers conveyed the real estate in question to the defendants George E. Shaw and Campbell Carrington as joint tenants with right of survivorship; they being officers of the Assets Realization Company and designated by that company to take and hold the title to said property. The defendants admit this, and they also admit that prior to the time that defendants, or any of them, took title to the said property, or paid for the same, plaintiff gave notice that it claimed to have a contract with Tisdale for the purchase of the Grey Iron Casting Company plant in question. The plaintiff claims that it tendered $31,500 in cash to the defendants, and demanded the conveyance of the premises in question, which was refused, such tender taking place August 13, 1912, and this tender and refusal the defendants admit.

[1] The dismissal of the plaintiff's complaint is based on the proposition that the court had no jurisdiction of the action because the plaintiff was a foreign corporation, and as such could not bring this action under the provisions of section 1780, Code Civ. Proc. At the outset we are called upon to answer the question whether or not the defendant Assets Realization Company is a necessary party to the action. All the defendants have voluntarily appeared in the action, and the answer on their behalf is a joint one. We are of the opinion that, while the Assets Realization Company was a proper party defendant, it was not a necessary one. All the relief which the plaintiffs claim to have been entitled to receive could have been adjudged them by a decree against the individual defendants, and against them alone. The company had no legal title to the property. That title was absolutely in Shaw and Carrington. It does not appear what equitable title, if any, the company had in the property. The only relationship between it and the individual defendants is that alleged in the complaint and admitted by the answer, that they were officers of the Assets Realization Company, and designated by it to take and hold title to the property. The Assets Realization Company would not have been required by any decree made herein to have done any act to make effective the transfer of title by the individual defendants, and when the latter were before the court and jurisdiction of their persons had been properly obtained, they could have been directed to perform any acts which the court deemed necessary for the enforcement of the plaintiff's rights, and their compliance with the judgment of the court would have granted plaintiff full relief.

[2] But even if the corporation were a necessary party defendant, we think the court still had jurisdiction under section 1780, Code Civ. Proc., providing in part:

"An action against a foreign corporation may be maintained by another foreign corporation or by a nonresident, in one of the following cases only: * * * 3. Where the cause of action arose within the state, except where the object of the action is to affect the title to real property situated without the state."

The contract between Kingsbury and the plaintiff specified no place for its performance, nor did it fix the time when title was to pass after

144 N.Y.S.—63

Kingsbury had bid in the property upon the receivers' sale. Ordinarily that would mean within a reasonable time after Kingsbury had acquired the property; and a demand, either orally or in writing, for performance would have been requisite. When defendants took title to this property, concededly with notice of the plaintiff's contract with Kingsbury for the retransfer thereof, it was incumbent upon plaintiff to make a demand before they became in default. That demand was made by the plaintiff's representative at the offices of the Assets Realization Company in the city of New York, when the demand was made as well upon it as upon the individual defendants who were its officers. We are of the opinion that the cause of action then arose when defendant failed to comply with the demand and assigned no valid reason for its refusal. The cause of action therefore arose within the state of New York, and jurisdiction was conferred under section 1780 upon the courts of this state to take cognizance of an action brought thereupon.

In Wester v. Casein Company of America, 206 N. Y. 506, 100 N. E. 488, the court said:

"The defendant having voluntarily anticipated its action and repudiated the contract, it should be treated the same, so far as the breach is concerned, as it would if the plaintiffs had in New York tendered the casein to the defendant, and the defendant had then waived the place of delivery, but wholly refused to accept it and wholly repudiated the contract. It would in that case have been a breach of the contract in New York, although the place of performance as provided by the contract was Argentine. The place where a cause of action for a breach of contract arises is generally—almost universally—the place where the contract is to be performed. The reason why the place of the breach of contract is generally the place of its performance is that, unless the place of performance is waived or performance is anticipated, it is only at such place that there is a breach, or that it can be determined whether there is a breach. An anticipatory breach of contract is not necessarily confined to the place of performance named in the contract. It depends upon the facts and circumstances in each case. In determining the place of the breach the time of the breach is important. Hamilton v. Barr, 18 L. R. Ir. 297; Mathews v. Alexander, Ir. R. (7 C. L.) 575; Cherry v. Thompson, L. R. (Q. B.) 573. Although the doctrine of an anticipatory breach is not applicable in all cases (see Kelly v. Security Mut. L. Ins. Co., 186 N. Y. 16 [78 N. E. 584, 9 Ann. Cas. 661]), it is applicable to the case now under consideration."

And it then cited from Hibernia National Bank v. Lacombe, 84 N. Y. 367, 38 Am. Rep. 518, which quoted with approval the statement in Durham v. Spence, L. R., 6 Ex. 383:

"The cause of action arises when that is not done which ought to have been done; or that is done which ought not to have been done. But the time when the cause of action arises determines also the place where it arises, for when that occurs which is the cause of action, the place where it occurs is the place where the cause of action arises."

In the case at bar, the contract containing no provision as to the place of performance, the cause of action arises when, upon demand made, the defendants refused to perform, assigning no reason for such refusal, and not claiming that performance was to be had at any other time or place. The cause of action, therefore, arose within the state of New York.

[3] The sole remaining question then is, Does the case come within the exception to subdivision 3, as one "where the object of the action is to affect the title to real property situated without the state"? That the courts of this state possessed jurisdiction in cases where the relief sought involved the transfer of lands without the state was thus laid down by Justice Cullen in Chase v. Knickerbocker Phosphate Co., 32 App. Div. 400, 53 N. Y. Supp. 220:

"It is settled law that a court of equity will make a decree against parties of whose persons it has obtained jurisdiction, not the indirect, but the direct result of which is to transfer the title to land beyond the jurisdiction of the court, provided the parties comply with the decree of the court. This rule is applicable in one class of cases, but not in other classes. The class in which the rule obtains is defined by Chief Justice Marshall in Massie v. Watts, 6 Cranch, 148 [3 L. Ed. 181], where he said, 'Upon the authority of these cases, and of others which are to be found in the books, as well as upon general principles, this court is of the opinion that, in a case of fraud, of trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction of that court may be affected by the decree,' though a court will not entertain jurisdiction where a naked question of title is involved, or a mere trespass or nuisance on extraterritorial real property is sought to be restrained. Northern Indiana R. R. Co. v. Michigan Central R. R. Co., 15 How. 233 [14 L. Ed. 674]. Numerous cases are to be found where the courts of this state have decreed the specific performance of contracts for the sale of real estate without the state, or trusts, connected with such real estate."

See, also, Stannard v. Atlantic Terra Cotta Co., 138 App. Div. 867, 123 N. Y. Supp. 733.

That the term "affecting the title to real property" does not apply to an action for specific performance of a contract to convey realty has been held under the Code of Washington. Morgan v. Bell, 3 Wash. 554, 28 Pac. 925, 16 L. R. A. 614. That such actions are not brought to determine titles, but to enforce purely personal contracts, was held under the Kansas Code. Close v. Wheaton, 65 Kan. 830, 70 Pac. 891. The principle upon which jurisdiction in such cases is asserted was well stated by Depue, J., in Lindley v. O'Reilly, 50 N. J. Law, 636, 15 Atl. 379, 1 L. R. A. 79, 7 Am. St. Rep. 802:

"Ever since Penn v. Lord Baltimore (1 Ves. Sr., 444), it has been established law that in cases of contract, trust, or fraud the equity courts of one state or country, having jurisdiction of the parties, are competent to entertain a suit for specific performance, or to establish a trust, or for a conveyance, although the contract, trust, or fraudulent title pertain to lands in another state or country. The principle upon which this jurisdiction rests is that chancery, acting in personam and not in rem, holds the conscience of the parties bound without regard to the situs of the property. It is a jurisdiction which arises when a special equity can be shown which forms a ground for compelling a party to convey or release, or for restraining him from asserting a title or rights in lands so situated, and is strictly limited to those cases in which the relief decreed can be obtained through the party's personal obedience. If it went beyond that, the assumption of jurisdiction would not only be presumptuous, but ineffectual. * * * The decree in a suit of this aspect imposes a mere personal obligation, enforceable by injunction, attachment, or like process against the person, and cannot operate ex proprio vigore upon lands in another jurisdiction to create, transfer, or rest a title."

Johnson v. Victoria Chief Copper Co. (65 Misc. Rep. 332, 119 N. Y. Supp. 639, affirmed 150 App. Div. 653, 135 N. Y. Supp. 1070), is not

an authority to the contrary, for there the cause of action did not arise within the state of New York, and jurisdiction over the foreign corporation was only claimed because of certain bank balances it was alleged to have on deposit in the city of New York.

The judgment appealed from will therefore be reversed, and a new trial ordered, with costs to appellant to abide the event, that it may be determined whether it would be equitable, upon all the facts which may be established upon such trial, to decree specific performance. All concur.